**UNITED STATES of America.**
**Plaintiff-Appellee,**

v.

**Fred M. MOSELY, Defendant-Appellant.**

**No. 85–3898.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 7, 1986.

Decided Jan. 22, 1987.

Richard A. Damiani, argued, James A. Draper, Cleveland, Ohio, for defendant-appellant.

Ann C. Rowland, argued, William J. Edwards, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before ENGEL, JONES and NELSON, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant Mosely appeals from a jury conviction on a six-count indictment charging violations of the Hobbs Act, 18 U.S.C. § 1951 (1982). Mosely asserts that three errors of the district court require reversal of his conviction. These alleged errors involve the method of exercising peremptory challenges employed by the court, the district court's denial of defendant's motion to act as co-counsel in his own defense under a hybrid representation theory, and comments on the testimony made by the district judge to the jury. As more fully set forth below, we find no reversible error and, therefore, affirm the judgment of conviction entered in this case.

The facts material to this appeal are as follows. In November of 1981, Mosely was elected judge of the East Cleveland Municipal Court. He was indicted by a federal grand jury on December 20, 1984, for multiple violations of the Hobbs Act. Count one of the indictment charged that Mosely conspired with John Urban, the Finance Director of the City of East Cleveland, to use Mosely's judicial position to extort money (approximately $200,000) under color of official right from Thomas Skingel and On Line Secretarial Services ("OLSS").

The alleged conspiratorial scheme called for Mosely and Urban, on behalf of the city, to contract with OLSS to recover past-due parking tickets. OLSS then overcharged the city, and the amount of the overcharge was kicked back to Mosely. Counts two and three charged Mosely with substantive acts of extortion under color of official right in furtherance of this conspiracy. Count four charged that Mosely and Urban conspired to extort money under color of official right by contracting, on behalf of the city, with two builders to board up vacant buildings and then take kickbacks from said builders. Counts five and six charged Mosely with substantive violations in furtherance of this latter conspiracy.

Mosely pleaded not guilty to the six counts of the indictment. Both Urban and Skingel pled guilty to various charges and testified for the government at Mosely's trial.

Mosely filed a pretrial motion on September 20, 1985, requesting that, as a member of the state and federal bars, he be allowed to participate in his own defense as co-counsel along with his two court-appointed counsel. On the morning of September 23, immediately before the commencement of the jury selection process, the district judge denied this motion, assuring the defendant that the court would "allow ample time for you to confer with your counsel considering the cross-examination of witnesses."

Following voir dire of 50 potential jurors, which was conducted by the court with the allowance of follow-up questions submitted by counsel, peremptory challenges were exercised by the "blind strike" method. Pursuant to the blind strike method, each side exhausted all of its peremptory challenges simultaneously (Mosely had 12 peremptories), without the benefit of knowing which venirepersons the adversary chose to strike. All venirepersons that were stricken by one or both parties were excused. The remaining panel members in the first 16 boxes then constituted the jury of 12 and four alternates.

Approximately mid-way through the trial, after the direct examination of the government's fourth witness, Mosely indicated to the district court his desire to proceed *pro se*. Although he stated that he had been satisfied with his appointed counsel up to that point, he disagreed with their strategy in cross-examination. The district judge honored defendant's constitutional right to self-representation. Moreover, it was on the judge's suggestion that Mosely requested and received the right to have the two court-appointed attorneys retained in an advisory capacity for the remainder of the trial.

Subsequently, Mosely personally conducted the cross-examination of the government's witness, Thomas Skingel. In an attempt to impeach the witness' credibility and in an apparent attempt to call into question the government's motivation in prosecuting him (Mosely), defendant questioned Skingel on the terms of his plea bargain agreement. He established that in return for Skingel's guilty plea and truthful testimony, the government would refrain from making any sentencing recommendation to the court as to Skingel and would not pursue prosecution of Skingel's wife. The cross-examination further established that Skingel had, in fact, lied under oath before the grand jury but that the government had not indicated its intention to recant the plea agreement. Immediately following the completion of appellant's cross-examination of this witness, the district judge, of her own volition, made the following statement to the jury:

> I just want to make one thing clear to the Jury so that there will be no confusion on your part, that when a plea agreement is entered into between the government and a defendant who chooses to plead guilty, rather than be tried, that any agreement between them as to the sentence is not binding on the Judge. The sentence is a matter that is the responsibility of the Court.

App. 105–06.

Mosely was ultimately convicted by the jury on all six counts of the indictment.

He was sentenced to 10 years imprisonment on each count—terms to run concurrently. Mosely appeals directly from this conviction.

## I.

■ Essentially, Mosely's argument on the first issue is that the blind strike method of exercising peremptory challenges deprived him of the ability to assess the potential jury incrementally as each peremptory was exercised. He maintains that this system frustrated his ability to intelligently exercise his peremptories and therefore denied him his full sixth amendment right to a trial by jury. It has long been established that the accused's right to peremptory jury challenges constitutes a "necessary part of trial by jury." *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) (citing *Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892)). While the right is not constitutional in origin, any system which denies or impairs the accused's right to exercise peremptories is reversible error without a showing of prejudice. *Id. See also St. Clair v. United States,* 154 U.S. 134, 148, 14 S.Ct. 1002, 1008, 38 L.Ed. 936 (1894). Furthermore, discriminatory use of the peremptory challenge to strike venirepersons solely on the basis of race may violate the accused's constitutional rights. *Batson v. Kentucky,* — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (14th amendment equal protection rights); *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), *vacated and remanded for reconsideration,* — U.S. —, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), *reinstated on remand,* 801 F.2d 871 (6th Cir.1986) (sixth amendment rights). Otherwise, the manner in which the peremptory challenges are exercised is a matter of local custom and traditionally has been left to the sound discretion of the district court. *United States v. Blanton,* 700 F.2d 298, 308–09 (6th Cir.), *rev'd on other grounds,* 719 F.2d 815 (6th Cir.1983) (en banc), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 125 (1984); *United States v. Anderson,* 562 F.2d 394, 396–97 (6th Cir.1977).

■ The blind strike method of exercising peremptory challenges was specifically, sanctioned by the Supreme Court in *Pointer v. United States,* 151 U.S. 396, 412, 14 S.Ct. 410, 416, 38 L.Ed. 208 (1894). Further, the government has cited reported opinions from three circuits upholding this manner of jury selection under Fed.R. Crim.P. 24(b). *See United States v. Roe,* 670 F.2d 956, 961 (11th Cir.), *cert. denied,* 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982); *United States v. Sarris,* 632 F.2d 1341, 1343 (5th Cir.1980); *Carbo v. United States,* 314 F.2d 718, 748 (9th Cir.1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964).

Mosely's counsel argued before this court that the *Pointer* decision was not controlling because it presented a different challenge to the blind strike method. The error asserted in *Pointer* was that the simultaneous exercise of peremptory challenges in a federal criminal trial was illegal as in substantial derogation of the Court's prior decision in *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), and in conflict with the law of the forum state. In rejecting the analogy to the *Lewis* decision, the *Pointer* Court indicated that a judgment of conviction would be reversed for the reasons stated in *Lewis* only where:

> it did not appear affirmatively from the record of [the] case that the accused was, in fact, brought face to face with all the jurors who were examined [on voir dire], and whose names were on the list ... furnished to him, or that he was not present during such examination, or that they were not all in his presence when he exercised his right to challenge....

151 U.S. at 406, 14 S.Ct. at 413–14. The Court also rejected the argument that the manner of exercising challenges is constrained by the laws of the forum state. To the contrary, such matters are left to the discretion of the particular court subject only to acts of Congress and applicable

federal court rules. *Id.* at 407–08, 14 S.Ct. at 414.

The *Pointer* decision also refuted the argument that the accused was entitled to have the government exercise its peremptory challenges first, noting that the opposite was true under English common law. *Id.* at 409–10, 14 S.Ct. at 415 (citing *Brandeth's Case,* 32 Howell's St.Tr. 755 (opinion of Abbott, J.)). The Court concluded with the observation that "[t]he right of peremptory challenge, this court said, in *United States v. Marchant,* [25 U.S.] 12 Wheat. 480, 482 [6 L.Ed. 700 (1827)], and in *Hayes v. Missouri,* 120 U.S. 68, 71 [7 S.Ct. 350, 352, 30 L.Ed. 578 (1887)], is not of itself a right to select, but a right to reject, jurors." 151 U.S. at 412, 14 S.Ct. at 416.

As in *Pointer,* the facts of record in the case at bar reflect that Mosely's right to reject venirepersons through the exercise of his 12 peremptory challenges was fully protected. None of the *Lewis* defects are present here. Furthermore, the district judge's discretion in the manner of exercising those challenges was unconstrained by statute or court rule. Rule 24(b) of the Federal Rules of Criminal Procedure does not address the manner of exercise. The advisory committee notes to subdivision (b) state that this rule embodies existing law as reflected in the civil peremptory challenge statute, 28 U.S.C. § 1870 (1982). The manner of exercise under the civil statute is also left to the sound discretion of the trial court. *Gafford v. Star Fish & Oyster Co.,* 475 F.2d 767 (5th Cir.1973). Finally, the local court rules for the Northern District of Ohio do not contain any provision restricting the district judge's discretion in this matter.

In sum, we hold that the district judge did not abuse her discretion in employing the blind strike method of exercising peremptory jury challenges. That method has been expressly condoned by the Supreme Court in *Pointer* and by several circuits. Keeping in mind the true nature of the peremptory challenge right—to reject rather than select potential jurors—we cannot say that the mere simultaneous exercise of those challenges impairs the accused's rights under either Rule 24(b) or the sixth amendment.[1]

## II.

With respect to Mosely's second assignment of error, it is unquestionably well-established that a person accused of a felony has a constitutional right to be represented by counsel and to have counsel appointed for him if he cannot afford one, *or,* alternatively, to represent himself in such proceedings. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This circuit has held that:

> The right to defend *pro se* and the right to counsel have been aptly described as "two faces of the same coin," in that waiver of one right constitutes a correlative assertion of the other. While it may be within the discretion of a District Court to permit both a criminal defendant and his attorney to conduct different phases of the defense in a criminal trial, for purposes of determining whether there has been a deprivation of constitutional rights a criminal defendant cannot logically waive or assert both rights.

*United States v. Conder,* 423 F.2d 904, 908 (6th Cir.) (citations omitted), *cert. denied,* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970). Other circuits have held that the question whether to allow a defendant to participate in his own defense along with

---

**1.** The foregoing notwithstanding, this might be an opportune time for district courts to review their existing policies and practices regarding the selection of jurors in both criminal and civil trials. While we recognize the virtues of experimenting with different methods of conducting voir dire and exercising challenges, there are also hazards attending the nonconformity of practice between the various courts. Given the renewed emphasis on the importance of the juror selection process in *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Booker v. Jabe,* 801 F.2d 871 (6th Cir.1986), *reinstating* 775 F.2d 762 (6th Cir. 1985), a reappraisal of the courts' discretionary practices in this regard with an eye to protecting efficiently the interests of individual litigants and the judicial system as a whole might avert future problems.

counsel in "hybrid representation" is a matter committed to the sound discretion of the trial court. *See, e.g., United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir.1981) (citing cases); *United States v. Williams,* 534 F.2d 119, 123 (8th Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Hill,* 526 F.2d 1019, 1024 (10th Cir.1975), *cert. denied,* 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976).

In the instant case, Mosely contends that since he was an attorney and a judge, admitted to practice in both state and federal courts, the district judge abused her discretion in disallowing the hybrid representation. While he suggests that he is not arguing for any special rights for lawyer defendants as opposed to nonlawyer defendants, Mosely does argue that his professional experience negates any possible policy justifications for the district court's denial of his motion. We do not consider this argument persuasive.

There are obvious justifications for the refusal to allow hybrid representation in criminal trials, regardless of the legal experience of the defendant. The potential for undue delay and jury confusion is always present when more than one attorney tries a case. Further, where one of the co-counsel is the accused, conflicts and disagreements as to trial strategy are almost inevitable. While the allowance of hybrid representation might be an appropriate exercise of discretion and perhaps even advisable in a situation where the defendant is a skilled attorney and his appointed counsel is not, the district judge in the instant case explicitly stated that counsel had "performed in a highly competent and professional manner" in pretrial representation. Lastly, it appears that the district court assured the defendant that he would be given ample time to consult with his counsel over strategy and, when Mosely ultimately requested to proceed *pro se,* the district court continued the appointment of the two counsel to act in advisory capacities. Under these circumstances, we think it clear that the denial of the motion for hybrid representation was a proper exercise of the district court's discretion.

## III.

The final issue raised on appeal relates to the district court's comment to the jury on the nonbinding effect of sentencing recommendations in the context of plea agreements. Mosely contends that this somehow chilled the effect of his cross-examination of the witness Skingel. Again we are unpersuaded.

█ The cross-examination had established that the witness had a plea agreement calling for truthful testimony on his part in return for the government's pledge to refrain from making a sentencing recommendation. The cross-examination further established that the witness had lied under oath before the grand jury but that the government had not recanted the agreement. The district judge's comment to the jury, quoted above, at most clarified a point of law on the issue of sentencing recommendations. It was not, as suggested, a comment on the evidence and in no way communicated to the jury the trial judge's impression of the witness' credibility. Moreover, since the statement was a correct recitation of the law, *see* Fed.R.Crim.P. 11(e)(1)(B), the only prejudice that could possibly have redounded to the defendant is that he would have been denied the benefit of a jury inference drawn from an incorrect understanding of the law. Certainly, a criminal defendant is not entitled to such inferences and it is the function of the presiding judge in jury trials properly to instruct the jury on the law to assure that such impermissible inferences are not drawn.

Mosely argues that if the district judge's only intent was to clarify the law on the nonbinding effect of sentencing recommendations, as opposed to making an improper and adversarial comment on the evidence, "why then did the court not go on to inform the jury that ... in the vast majority

[of cases] they are followed?" This rhetorical question is without foundation. He offers no data supporting his assertion that sentencing recommendations from the prosecution are usually followed either by sentencing judges in general or by this district judge in particular. In our opinion, this is not a matter of such common knowledge that this court could take judicial notice of the practice. In short, Mosely's point seems to be without basis in law or fact and, in any event, is irrelevant to the contested issue.

■ We believe that, properly construed, the instant comment was no more than an accurate explanation of a collateral point of law necessary for the jury to analyze properly the witness' testimony. It was not a comment on the testimonial evidence *per se*, and most certainly was not hostile or prejudicial to the accused. *Cf. Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). Furthermore, any possible improper inference that the jury might have drawn from this comment was adequately disclaimed in the court's instructions:

> Do not assume from anything I may have said that I have an opinion concerning any of the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

App. 45. Due to the innocuous nature of the comment itself and the curative instruction, it cannot be said that the accused was harmed to such an extent that reversal of the conviction is warranted. *See United States v. Olgin*, 745 F.2d 263, 268–70 (3d Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985).

### IV.

Because we conclude that Mosely's three assignments of error are without merit, the district court's judgment of conviction is AFFIRMED.