**UNITED STATES of America ex rel. John WILLIAMS, Petitioner,**

v.

**Michael O'LEARY, Respondent.**

No. 88 C 10124.

United States District Court, N.D. Illinois, E.D.

March 28, 1989.

Mary Stowell, Chicago, Ill., for petitioner.

Richard S. London, Ass't Att'y Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

John Williams ("Williams") originally filed a pro se petition for writ of habeas corpus (the "Petition") under 28 U.S.C. § 2254 ("Section 2254") against Stateville Correctional Center Warden Michael O'Leary ("O'Leary").[1] Initially O'Leary

moved to deny the Petition for failure to exhaust state court remedies (see Section 2254(b)), but this Court denied that motion orally and ordered O'Leary to answer.

Now O'Leary has filed an Answer and the parties have submitted memoranda in support of their respective positions. For the reasons stated in this memorandum opinion and order, Williams' Petition is denied and this action is dismissed.

### Procedural Background

Williams was tried, convicted and sentenced in the Circuit Court of Cook County to a 28–year term for aggravated criminal sexual assault and abuse. Throughout the proceedings—at the preliminary hearing, at arraignment, during the jury trial and at sentencing—he represented himself. After Williams' pro se motion for a new trial was denied, the trial judge appointed the State Appellate Defender's office to represent him on appeal.

On February 9, 1988 [2] Appellate Defender Jeffrey Walker ("Walker") filed a brief with the Illinois Appellate Court on Williams' behalf. Less than a week earlier (on February 3) Walker had written Williams enclosing the brief and stating (Williams Mem. Ex. A):

> If you wish to file a *pro se* supplemental brief on your own behalf covering other issues or you wish to try to persuade me to file one concerning other issues, there will be plenty of time to do so because the State will not answer your brief for at least six months. I look forward to hearing from you.

Walker's extensive brief—75 pages in all—addressed three issues from the new trial motion, plus nine new issues. Those did not cover all the matters sought to be

---

1. Promptly after receipt of any Section 2254 petition tendered without payment of the filing fee, this Court makes the threshold determination *as to whether the petition is non-"frivolous"* in the sense most recently refined by our Court of Appeals in *Williams v. Faulkner,* 837 F.2d 304, 306–07 (7th Cir.1988) *as aff'd sub nom. Neitzke v. Williams,* — U.S. ——, 109 S.Ct. 53, 102 L.Ed.2d 32 (1988). If that question gets an affirmative answer, with the rarest of exceptions this Court immediately appoints a lawyer from this District Court's trial bar to represent

the impecunious litigant pro bono publico. In this instance that procedure resulted in the appointment of Mary Stowell as Williams' counsel. Special thanks are due Ms. Stowell—both from Williams and from this Court—for the high quality of representation she has provided in presenting the legal arguments in support of the Petition.

2. All other dates referred to in this opinion were also in 1988.

advanced by Williams, who had about a dozen issues of his own that he wished to point out to the Appellate Court (Pet. 6A–6D).

As matters developed, Williams had no opportunity to make any changes in the brief. Walker did agree to visit Williams in March to discuss the possibility of filing additional materials, but that visit never transpired. Williams, not surprisingly in light of Walker's letter, then attempted to argue his additional issues by filing a pro se supplemental brief. When the State objected, the Appellate Court denied leave to file (*People v. Williams*, No. 86–3550 (Ill. App. 1st Dist. May 24, 1988) (unpublished order)).

Nonplussed, Williams then attempted to fire his lawyer—the Appellate Defender's Office—in a five-page June 7 letter (Pet. App. 26–31). Toward the same end he has filed a series of motions with the Appellate Court: to rehear his motion to file the supplemental brief (*id.* 32–36), to object to Walker's brief (*id.* 42–46) and—later in 1988—to force Walker and his office to withdraw and to "appoint counsel from the Illinois Bar Association" in their stead (*id.* 49–54). All were denied. Before that last motion Williams sought to obtain an Illinois Supreme Court order directing the Appellate Court to permit the filing of his pro se supplemental brief, and that too was denied (*id.* 74–B). After the Appellate Court turned down Williams' final motion to appoint substitute counsel (that order was entered November 9), he filed the Petition with this Court on December 1.

### Williams' Claims

Before this Court, Williams' able appointed counsel asserts on his behalf that the Illinois Appellate Court's refusal to accept his supplemental brief violated:

1. his Sixth Amendment[3] right to self-representation and

2. his Fourteenth Amendment right to due process of law and a fair trial.

It is hardly surprising that O'Leary's opening memorandum—filed after Williams' pro se Petition and before the brief by Williams' appointed lawyer—did not address the self-representation issue at all: Williams' Petition was really framed as an ineffective-assistance-of-appellate-counsel claim, and the Attorney General had no reason to anticipate the different argument now made on Williams' behalf.

At least on the surface the ineffective-assistance claim seems inordinately difficult, given (1) the stringent requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and (2) the lengthy and wide-ranging brief filed by the Appellate Defender. In any event, the issue has not been argued by Williams' counsel here and will therefore not be resolved in this opinion.

### Exhaustion of Remedies

As a preliminary matter, O'Leary urges the Petition should be denied because Williams has failed to exhaust state court remedies under Section 2254(b)—because his direct appeal of his conviction is still pending! That contention is frankly absurd.

After all, the very essence of Williams' claim is the pendency of that direct appeal: His entire focus is on the effort to get additional issues presented to the Appellate Court before the appeal is decided.[4] And Williams has a major stake in the success of that effort, for if he fails to get those issues before the Appellate Court:

1. Later review of the issues by the Illinois Supreme Court will be foreclosed (*Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 209–10, 73 Ill.Dec. 350, 358, 454 N.E.2d 210, 218 (1983)).

---

**3.** As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provisions (which of course impose limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody the Bill of Rights guaranties).

**4.** As already explained, his persistent activities toward that goal have included an appeal to the Illinois Supreme Court.

2. As long as the Appellate Defender is still considered to be Williams' counsel, in any later Section 2254 proceeding the issues not tendered by that counsel would have to meet the difficult *Strickland* criteria for judging allegedly inadequate representation based upon a failure to raise such issues (and see *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)).

As to the vital issue, then—Williams' ability to preserve issues for ultimate appeal or habeas purposes—there is now "an absence of State corrective process" under Section 2254(b), so habeas relief now is not prohibited. Ironically enough, however, for reasons explained in the following section, the principle of exhaustion of remedies defeats Williams on a quite different basis.

### *Self-Representation*

■ Williams' self-representation claim —that is, the one advanced by his appointed counsel here—is one of apparent first impression. It has long been held (e.g., *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)) that a criminal defendant is entitled to assistance of trial counsel. That entitlement also extends to the first appeal as of right (*Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)).

But trial counsel cannot be forced on an unwilling defendant. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) established that the Sixth Amendment guarantees a state criminal trial defendant the right to self-representation. Though *Faretta* did not directly address the same question at the appellate level, the identical considerations stated in *Faretta, id.* at 834, 95 S.Ct. at 2540 (footnote omitted) would seem to apply at that later stage:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." *Illinois v. Allen,* 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (Brennan, J., concurring).

As stated earlier, O'Leary does not speak to the pure self-representation question. Instead he relies on case law stating a criminal defendant has no absolute right to *both* self-representation and assistance of counsel (see, e.g., *United States v. Tarantino,* 846 F.2d 1384, 1420 (D.C.Cir.1988); *United States v. Mosely,* 810 F.2d 93, 97–98 (6th Cir.1987)). Most typically that rule is applied in the trial context (*United States v. Oakey,* 853 F.2d 551, 553 (7th Cir.1988) (citation omitted)):

> [A] defendant may not engage in "hybrid" representation by acting as cocounsel along with either a court appointed attorney or with his own attorney.... Hybrid representation is disfavored since it allows a defendant to address the jury, in his capacity as counsel, without being cross-examined, in his capacity as a defendant.

That kind of consideration obviously has no corollary at the appellate level. But that non-parallel merely suggests that "hybrid representation" should not be "disfa-

vored" at the appellate stage.[5] It surely does not connote a constitutional *right* to such a hybrid arrangement.

In that respect O'Leary points to the Fifth Circuit's procedural policy, quoted in *United States v. Gates,* 557 F.2d 1086, 1089 (5th Cir.1977), that precludes the filing of a pro se brief after retained or appointed counsel has filed one on defendant's behalf. Interestingly enough, because the submission in *Gates* had antedated the adoption of the policy, the Court of Appeals actually did consider the arguments raised in the supplemental brief.[6] More critically for present purposes, however, *Gates* did not discuss the question of constitutionality at all.

But once again all that is beside the mark when the issue is not whether the Constitution grants a right to hybrid or dual representation at the appellate level— the right to submit both a lawyer's work *and* that of the litigant—but rather whether the Constitution assures either one *or* the other. On that score *United States v. Conder,* 423 F.2d 904, 908 (6th Cir.1970) (quoted in *Mosely,* 810 F.2d at 97) put the matter succinctly:

> The right to defend *pro se* and the right to counsel have been aptly described as "two faces of the same coin," in that waiver of one right constitutes a correlative assertion of the other.... [F]or purposes of determining whether there has been a deprivation of constitutional rights a criminal defendant cannot logically waive or assert both rights.

It must be concluded that Williams' appointed counsel reads the Constitution rightly: *Faretta's* teaching extends to appellate proceedings, and if he so chooses Williams has the right to go it alone before the Illinois Appellate Court (as he did in fact throughout the trial court proceedings). Nor, under the circumstances described earlier in this opinion, did Williams waive that right of self-representation when he accepted the services of the Appellate Defender who had been appointed for him [7]—for he clearly believed (and was led to believe) that he would have the opportunity personally to submit the issues he considered critical to his case. And when that expectation was defeated, he acted swiftly to assert it in any way he could.

But where Williams' case fails before this Court is that any right to self-representation (rather than hybrid representation) was first plainly articulated on his behalf in *this* Court by his appointed counsel here. Williams himself never clearly asserted or exercised his own right to self-representation before the Illinois Appellate Court in the first instance. What Williams

---

5. In truth, this Court has some difficulty in understanding just why the Illinois Appellate Court did not simply grant leave to Williams to file his supplemental brief and leave it at that. Though this should not be misunderstood as depreciating either the workload of that court or its procedural policies—those are its business and not this Court's—the regular diet of a federal District Court judge encompasses at least as much briefing to wade through (including at least as much pro se material) and at least as much opinion writing to churn out as any appellate court judge encounters. It would not seem oppressive to add to any court's task the burden of reading through another pro se submission to see whether it contains a meritorious legal argument not asserted by appointed counsel. This Court has been tendered some work products by "jailhouse lawyers"—persons not holding a law degree—that would have done justice to anyone with a license to practice our profession. And lest this perception be thought of as idiosyncratic, no lesser authorities than the New York Court of Appeals and the United States Supreme Court have perceived no inherent vice in the pro se supplementation of a lawyer's submission (see *Jones v. Barnes,* 463 U.S. 745, 748–50, 103 S.Ct. 3308, 3311–12, 77 L.Ed.2d 987 (1983)). In any case, however, the bottom line in this federal habeas proceeding is not what the Appellate Court might *choose* to do but whether it is constitutionally *compelled* to accept Williams' filing.

6. Lawyers also often play on that facet of human nature. It takes an iron-willed judge, confronted with a motion that seeks leave to file an unbidden surreply memorandum, to deny the motion without having read what the movant has to say in the memorandum tendered along with the motion.

7. Though the record is not entirely clear on this subject, it appears that such appointment was on the Appellate Court's own motion rather than at Williams' request. But even were it otherwise, Williams' understanding next referred to in the text would negate any finding of waiver on his part.

in fact did there—notwithstanding his present counsel's characterizations—was to move "to dismiss the Appellate Defender's Office, and appoint counsel from the Illinois Bar Association to represent Appellant" (Pet.App. 49). Although he also presented a number of other motions, including one for leave to file his supplemental pro se brief, he never specifically asserted his constitutional right to represent himself without *any* assistance of counsel.

That wish has now been made crystal clear. Williams retains an unwaived right to represent himself even at this stage of the appellate proceedings. But at this juncture he has asserted that right in the wrong court—for having failed to make and lose that argument before the Illinois Appellate Court, he has not exhausted his state remedies.[8]

Although the Illinois Appellate Court denied Williams' motion, it unquestionably read the motion as it was written: as seeking appointment of a lawyer to substitute for the Appellate Defender, not as asserting the right to proceed pro se (*People v. Williams*, No. 86–3550 (Ill.App. 1st Dist. Nov. 9, 1988) (unpublished order)). Williams should not be barred from filing a new motion asking the latter relief.[9] Availability of that state remedy bars the current proceeding (*Crump v. Lane*, 807 F.2d 1394, 1395–96 (7th Cir.1986)).

### Conclusion

Williams has not "exhausted the remedies available in the courts of the State" (Section 2254(b))—certainly not within the meaning of Section 2254(c). There is no need for an evidentiary hearing (Rule 8(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts). Williams' Petition is denied, and this action is dismissed.

---

8. To put the same principle in different terms, there is nothing in the record to suggest that Williams would not *win* that argument if properly presented to the Appellate Court. And if he did, there would be no occasion for federal intervention at all. Indeed, that is the very reason for the requirement of exhaustion of state remedies—the recognition that state courts are equally bound to uphold the Constitution and are certainly equally capable of doing so.

9. For that purpose Williams' appointed counsel here is directed to provide Williams with any assistance he requests in preparing and filing such a motion in the Appellate Court. Once that is done, Williams' appointed counsel is of course relieved of all responsibility, because Williams must continue in that venue alone.