916 F.2d 713
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Billcan v. SCOTT, Petitioner-Appellant,
v.
Eric C. DAHLBERG, Respondent-Appellee.
 No. 89-3851.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Billcan V. Scott, appeals from the denial of his application for a writ of habeas corpus. 28 U.S.C. Sec. 2254. Scott was convicted on a nine-count indictment after a jury trial. The offenses of which he was convicted included rape, kidnapping, burglary, and gross sexual imposition. Although the sentence he received on some of the counts was concurrent, he received an aggregate sentence of 15 to 50 years.
 
 
 2
 Scott appealed through the Ohio state court system but his claims of error were rejected and his convictions were affirmed. In January 1989, he filed this habeas petition which presented four grounds for relief: (1) denial of his right to a speedy trial, (2) violation of Miranda rights, (3) ineffective assistance of counsel, and (4) denial of the right of self representation and the right to new appointed counsel.
 
 
 3
 On August 30, 1989, the district judge filed a 21-page opinion in which he thoroughly and carefully analyzed each of petitioner's claims. Judge Kinneary found claims one, three, and four to be without merit and further found that petitioner's second claim (Miranda ) had been waived. Upon a full review of the record, we agree with the conclusions reached by Judge Kinneary and affirm on the basis of his opinion. We write briefly only for further clarification.
 
 I.
 
 4
 On July 24, 1987, Scott gained entry to the second floor apartment of Countess Taylor by way of a doorwall leading to a balcony. It was 1:30 a.m., but Taylor was still awake studying for her bar examination, which was only two days away. It is unnecessary to repeat in any detail the sordid events that followed. Scott raped Taylor and committed other acts of gross sexual imposition over an extended period of time. A neighbor, living in the apartment below, heard Taylor's screams and the apparent sounds of a struggle and called police.
 
 
 5
 The two policemen who responded did so after being dispatched to investigate a "disturbance." Not being sure of either the exact location or nature of the problem, one of the police officers eventually knocked on Taylor's door. Taylor could not respond, however, since Scott was still present and demanded she remain silent. The officer left when there was no answer, and Scott grabbed his clothes and started to flee. The officers were still on the premises when Scott ran down the stairs clad only in his pants and clutching his shoes and shirt. Before he could exit, he encountered one of the officers. The other officer was outside looking up at Taylor's apartment, and he saw her frantically trying to open the doorwall to the balcony to call for help. The two officers then held Scott at gunpoint and tried to find out what was going on, since at this point in time they did not know if a crime had been committed or if Scott was involved. Scott tried to bluff it out with the officers and told them he had just had a fight with his girlfriend, which explained his hasty half-clad exit. Scott, however, could not give them the name of the person whose apartment he just left. The officers handcuffed Scott and put him in the patrol car until they could investigate further. The officers talked to Taylor and the neighbor downstairs and pieced together what had occurred. Scott was arrested and later indicted.
 
 
 6
 Scott's defense at trial was that he and Taylor had been seeing each other for six to eight weeks and were involved in an intimate relationship that terminated on the night he was arrested when Scott told Taylor he had another girlfriend. Scott, lacking credibility but certainly not chutzpah, testified accordingly at trial. Taylor's version of the rape was allegedly just her way of getting even with Scott. The subsequent cross-examination of Scott and recalling of Taylor as a rebuttal witness simply destroyed the defense. At all times in the prior six weeks that Scott was allegedly calling and seeing Taylor, she had been attending a nightly bar review course. A close friend of Taylor, Larry Sellers, testified in Scott's behalf and stated he had once seen Scott with a woman other than Scott's regular girlfriend, but he could not say for sure that the woman was Taylor.
 
 
 7
 In short, the government's case against Scott was very strong, and the efforts made to fabricate a defense only strengthened the government's case.
 
 II.
 A. The Speedy Trial Issue
 
 8
 Four and one-half months after indictment, Scott executed a waiver of a right to a speedy trial. For the period prior to the waiver, he could show no prejudice resulting from this minimal lapse of time. Additionally, the delay was caused by his attorney's request for more time to prepare for the trial. Under such circumstances there is clearly no constitutional violation. Barker v. Wingo, 407 U.S. 514 (1972).
 
 B. The Miranda Issue
 
 9
 When the police were questioning Scott after he was found fleeing from Taylor's apartment, he was unable to supply the name of the alleged girlfriend that he just left. At the time Scott failed to come up with a name, he had not been given any Miranda warnings, although it was clear he was not free to leave at that point in time. The jury was made aware of his inability to supply a name, and Scott made no trial objection at any time to this testimony. Furthermore, Scott never raised this as a separate issue in his state court appeals, but did allude to it as part of his argument that he had ineffective assistance of counsel. The district court concluded that the failure of Scott to raise this claim in the state courts as required by state procedures precludes habeas corpus review unless the petitioner can show cause for his failure to raise the claim and actual prejudice from the constitutional violation claimed. Wainwright v. Sykes, 433 U.S. 72 (1977); Engle v. Isaac, 456 U.S. 107 (1982); Murray v. Carrier, 477 U.S. 478 (1986). We agree. Scott is unable to show cause, since we reject his ineffective assistance of counsel argument, and arguably cannot show prejudice. Scott took the stand and testified, and his inability to name his "girlfriend" would have been admissible against him on cross-examination for impeachment purposes notwithstanding the lack of Miranda warnings. Harris v. New York, 401 U.S. 222 (1971).
 
 
 10
 We also note that this is a situation in which the police did not even know if a crime had been committed at the time Scott was asked the name of the person whose apartment he just left. Scott was being held while the police investigated, but he was not at that time the target of any investigation. Under such circumstances, the application of Miranda is doubtful. Berkemer v. McCarty, 468 U.S. 420, 439 (1984).
 
 
 11
 C. The Ineffective Assistance of Counsel Issue.
 
 
 12
 Petitioner's arguments here relate primarily to the Miranda issue just discussed and the failure of defense counsel to call other witnesses to substantiate the petitioner's story. As we have indicated, since it is doubtful that there is a Miranda issue, counsel cannot be ineffective for failing to raise it.
 
 
 13
 As to the other two witnesses that petitioner references, they were subpoenaed and came to the trial, but defense counsel decided not to call them as a matter of strategy after discussing this decision with Scott. The "strategy" in this case was easy to understand. Petitioner was already digging himself into a hole with his testimony; his testifying friend, Sellers, did nothing to help and the defense attorney wisely did not want more of the same.
 
 
 14
 Reviewing the trial transcript as a whole and applying the standards for measuring an ineffective assistance of counsel claim as set forth in Strickland v. Washington, 466 U.S. 668 (1984), we conclude that defense counsel's performance was adequate in light of the strong evidence against the defendant.
 
 
 15
 D. The Self Representation/Appointment of New Counsel Issue
 
 
 16
 In his final claim for relief, Scott asserts that he was denied his right to self-representation and, at the same time, he was denied the appointment of new counsel. These claims are inconsistent. While Faretta v. California, 422 U.S. 806 (1975), established the constitutional right of self-representation, that right is not consistent with the insistence on the right to counsel:
 
 
 17
 The right to defend pro se and the right to counsel have been aptly described as "two faces of the same coin," in that the waiver of one right constitutes a correlative assertion of the other. While it may be within the discretion of a District Court to permit both a criminal defendant and his attorney to conduct different phases of the defense in a criminal trial, for purposes of determining whether there has been a deprivation of constitutional rights a criminal defendant cannot logically waive or assert both rights. The defendant must make a choice, and he should not be permitted to manipulate his choice so that he can claim reversible error on appeal no matter which alternative he apparently chose in the District Court.
 
 
 18
 United States v. Conder, 423 F.2d 904, 908 (6th Cir.) (citations omitted), cert. denied, 400 U.S. 958 (1970), cited in United States v. Mosley, 810 F.2d 93, 97 (6th Cir.), cert. denied, 484 U.S. 841 (1987).
 
 
 19
 Scott stated to the trial court on the morning set for trial:
 
 
 20
 I would like to waive counsel, sir. My lawyer wasn't on my best interests. He already said I was going to be found guilty. He told me.
 
 
 21
 .............................................................
 
 
 22
 ...................
 
 
 23
 * * *
 
 
 24
 I would love to waive counsel and get me a better lawyer, sir.
 
 
 25
 (Trial Tr. 10-11). It was thus clear that Scott made no unequivocal claim to represent himself. As for the request for new counsel, the state court of appeals found:
 
 
 26
 Absent an attorney-client conflict which rises to the level of a Sixth Amendment problem, the trial court has discretion to decide whether or not to grant a continuance for substitution of counsel during the course of the trial.... While the trial court herein did not make an in depth inquiry into appellant's complaint, the trial record shows that the judge questioned the good faith objection which appellant raised regarding the effectiveness of his counsel. When appellant relied on counsel's statement that appellant would probably be found guilty to support his assertion that counsel did not have the best interest of his client at heart, the judge rebuffed the idea stating that this could result in a continued pattern of dismissal and appointment of new counsel because each new attorney could possibly tell the client the same thing concerning his chances of being found innocent. The record supports a finding that the trial court had a valid reason to question the good faith objections of appellant to the effectiveness of his counsel; thus, the trial judge did not abuse its discretion in refusing to grant a continuance.
 
 
 27
 (App. at A-188-189).
 
 
 28
 We agree with the conclusion of the appellate court and, furthermore, find it to be essentially a factual finding which we must presume to be correct. 28 U.S.C. Sec. 2254(d); Marshall v. Lonberger, 459 U.S. 422 (1983).
 
 
 29
 AFFIRMED.