RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0374p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 02-1571

*v.*

RODNEY GREEN,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-80113—Lawrence P. Zatkoff, District Judge.

Argued: May 19, 2004

Decided and Filed: August 5, 2004[*]

Before: GIBBONS and COOK, Circuit Judges; OLIVER, District Judge.[**]

---

## COUNSEL

**ARGUED:** Dana B. Carron, Westland, Michigan, for Appellant. Jennifer J. Peregord, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Dana B. Carron, Westland, Michigan, for Appellant. Jennifer J. Peregord, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Rodney Green was sentenced to fifteen years imprisonment after pleading guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). After firing three attorneys, one on the day of sentencing, Green was ultimately sentenced without the benefit of counsel. On appeal, Green argues (1) that he was deprived of his Sixth Amendment right to counsel; (2) that his second attorney provided ineffective assistance of counsel; and (3) that he was coerced into accepting the government's plea offer. For the following reasons, we affirm Green's conviction and sentence.

---

[*] The decision was originally issued as an "unpublished decision" filed on August 5, 2004. On October 1, 2004, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

I.

Green was initially indicted on February 8, 2001, on one count charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), for his possession of a Smith & Wesson Model 6946 9mm caliber semiautomatic pistol. On August 2, 2001, police went to Green's residence to arrest him on a warrant issued pursuant to the indictment and discovered additional weapons inside the residence. On December 12, 2001, the grand jury returned a superseding indictment charging Green on three separate counts. Count 1 contained the original charge: felon in possession of a firearm. Count 2 charged Green with the same offense for his possession of other weapons: a Mac 90 assault rifle, a Glock model 19 9mm caliber semiautomatic pistol, a Jennings .380 caliber pistol, and a Davis Industries .380 caliber pistol. Count 3 charged Green with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), because the serial number on the Jennings .380 caliber pistol had been obliterated. Green signed an acknowledgment of this superseding indictment in which he acknowledged that he could receive up to life and not less than fifteen years and a $25,000 fine on each of the first two counts, and five years and a $250,000 fine on the third count.

Green's trial was set for December 10, 2001. On November 21, 2001, Green dismissed his original retained attorney, David Cripps, and hired a second attorney, Suzanna Kostovski. The trial was delayed until January 14, 2002, to give Kostovski time to prepare. Kostovski then requested that the plea cutoff date be extended. The court extended the deadline for reaching a plea agreement and further delayed the trial until February 7, 2002. On January 24, 2002, Green entered into a plea agreement under which he pleaded guilty to count two of the superseding indictment.

At Green's plea hearing, Judge Lawrence Zatkoff specifically questioned Green regarding his opinion of Kostovski's services to that point, asking, "Are you satisfied with her advice and the services that she has rendered to date?" Green responded, "At this point, yes." Judge Zatkoff followed up by asking "[d]o you understand what is going on here this afternoon?" Green responded, "Yes. From what she explained to me, I understand."

The judge explained the range of possible sentences to Green. He asked, "Do you understand that the maximum penalty that can be imposed on you for violating that statute is you could be incarcerated for up to life?" Green said, "Yes." The judge further questioned, "Do you understand that there is a statutory mandatory minimum of 15 years incarceration . . . . In other words, if I wanted to give you less than 15 years I couldn't do it." Green responded, "Yes." After giving this explanation, the judge asked Green whether he wanted time to talk his possible sentence over with his attorney. Green said that he did not. Then the judge specifically attempted to ascertain whether Green had been coerced into the guilty plea.

| | |
|---|---|
| The Court: | Has anybody tried to force you to plead guilty by any mistreatment or pressure or duress made upon you in any way? |
| Green: | No. |
| The Court: | Have you been promised that the court is going to go easy on you or be lenient with you if you plead guilty? |
| Green: | No. |
| The Court: | Except then for what's already been stated here in open court today and what is contained [in] that Rule Eleven Plea Bargain Agreement, have any promises of any kind or any threats of any kind been made to you to induce you to plead guilty? |
| Green: | No, sir. |
| The Court: | Are you therefore pleading guilty freely and voluntarily because, in fact, you are guilty and it's your choice to plead guilty? |
| Green: | Yes. |

Green's plea was then entered and his sentencing hearing was scheduled for April 25, 2002.

On February 23, 2002, Green filed several pro se motions: (1) notice of dismissal of counsel and motion to proceed in forma pauperis; (2) motion requesting appointment of counsel; and (3) motion for production of transcripts at the government's expense. The judge later ordered that Green's pro se motions be stricken from the record due to his failure to serve the United States Attorney with copies. Also on February 23, 2002, Green sent Suzanna Kostovski a letter dismissing her as his attorney. In this letter Green detailed his grievances against Kostovski, primarily alleging that she coerced him into accepting the government's plea offer by telling him that the judge was a racist and was out to get Green and that Green could receive thirty years to life imprisonment if convicted at trial. On March 6, 2002, Kostovski entered a motion to withdraw as counsel, which the judge granted after a March 28, 2002, hearing.

At the hearing, Green informed the judge that he did not want a third attorney to represent him as lead counsel, but rather wanted to proceed pro se with an attorney appointed to advise him as cocounsel. The judge advised Green that this arrangement was not a possibility. At the end of the hearing, the judge told Green, "I believe it's in your best interest for me to appoint counsel for you. You are not an attorney. I'm going to appoint either a public defender or what's called a panel attorney, somebody who works for the public defender, and that person is going to be in charge of this case." Green responded, "Not with me they are not."

At the sentencing hearing on April 25, 2002, Green was represented by appointed attorney William Daniel, his third lawyer. Green's first words upon being recognized by the court were, "First of all, I would like to say that he is fired." Green alleged that Daniel was not representing his interests because "[h]e's working for the government." As the court pointed out, Green had also accused his prior two attorneys of conspiring against him with the government. Green reiterated his request that the court appoint an attorney to act as his cocounsel, but the court again refused. Green again stated his desire that Daniel not represent him, at which time the judge discharged Daniel from the case. The judge accepted the plea agreement and imposed sentence in accordance with its terms. He sentenced Green to fifteen years imprisonment, three years supervised release, a $100 assessment, and a $12,500 fine, in accordance with the parties' plea agreement. Green then filed this timely appeal.

II.

A.      *Right to Counsel*

We review the district court's refusal to appoint Green a fourth attorney to act as his cocounsel for an abuse of discretion. *United States v. Mosely*, 810 F.2d 93, 98 (6th Cir. 1987). The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend VI. A defendant's right to counsel extends to sentencing. *Mempha v. Rhay*, 389 U.S. 128, 135 (1967). Green argues on appeal that the judge's refusal to appoint a fourth attorney violated this right.

The Sixth Amendment right to counsel "does not guarantee that a criminal defendant will be represented by a particular attorney." *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989). As this court has stated, "the important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court . . . ." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988) (citations omitted). Additionally, a "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a valid waiver of counsel." *United States v. Henderson*, No. 98-5216, 1999 U.S. App. LEXIS 8670 at *5-6 (6th Cir. May 3, 1999).

In *Henderson*, the defendant was indicted on charges related to his possession of cocaine base discovered during a traffic stop. *Id*. at *1. Henderson's first court-appointed attorney moved to withdraw his representation, citing Henderson's "reluctance to 'hear what this counsel has to say any longer.'" *Id*. at 3. The district court granted his motion and appointed a second attorney. The day before his scheduled trial, Henderson made an oral request for new counsel. *Id*. The court inquired into the reasons for

Henderson's dissatisfaction with his attorney and concluded that his request for new counsel was unreasonable. Henderson was then presented with the choice of proceeding to trial the next day with the attorney or without him. Henderson declined the attorney's services. He entered a guilty plea the next day and was sentenced without the benefit of counsel. *Id*. at *4. On appeal, we found that Henderson's unreasonable demand for dismissal of counsel and appointment of new counsel amounted to a valid waiver in that case. *Id*. at *5-6. We are confronted with a similar situation here.

Green dismissed his original retained counsel shortly before his first trial date, thereby delaying his trial from December 10, 2001, to January 14, 2002. Green then obtained a further delay, to February 7, and an extension of the plea cutoff date. After pleading guilty, Green fired his second retained counsel even though he had specifically stated in an earlier hearing that he was satisfied with her services. Judge Zatkoff warned Green that his sentencing date of April 25, 2002, would not be delayed. Judge Zatkoff appointed a third attorney to represent Green at his sentencing hearing, but Green fired this attorney on the day of sentencing, despite repeated warnings by Judge Zatkoff that the sentencing date would be delayed no further. Green accused all three of his attorneys of conspiring against him with the government. Green refused to allow himself to be represented by counsel, instead insisting that the court appoint a lawyer to act as his cocounsel. We find, as in *Henderson*, that this persistent, unreasonable demand for dismissal of counsel and appointment of new counsel functioned as a valid waiver of the right to counsel.[1]

Further, Green had no protected right to the sort of "hybrid representation" he demanded. *Wilson v. Hurt*, No. 00-3165, 2002 U.S. App. LEXIS 2092 at *8-9 (6th Cir. Feb. 6, 2002). Rather, whether to allow this kind of representation is "a matter committed to the sound discretion of the trial court." *Mosely*, 810 F.2d at 98. In *Mosely*, the district court refused to allow the defendant to act as his own counsel with the assistance of cocounsel even though the defendant in that case was an attorney and judge. It did so because of the potential for confusion, the competence of the defendant's attorneys, and the existence of ample time for the defendant to consult with his attorneys. *Id*. The same considerations apply here, but with even greater force due to Green's relative inexperience with the law. For these reasons, the district court did not abuse its discretion in denying Green's request for a fourth attorney to represent him as cocounsel.

B.      *Ineffective Assistance of Counsel*

Generally, "a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). An exception to this general rule exists when "the record is adequate to assess the merits of the defendant's allegations." *Id*. An adequate record does not exist in this case. Green has done little to develop his proof of ineffective assistance of counsel. Therefore, the proper vehicle for Green to raise his ineffective assistance claim is a motion under 28 U.S.C. § 2255.

---

[1] The persuasive authority of *Henderson* is not without limits. In *United States v. Thomas*, No. 98-3851, 2000 U.S. App. LEXIS 14071 (6th Cir. June 8, 2000), we considered a similar case in which the trial court refused to further delay the trial of a defendant who, on the day of trial, moved for a continuance in order to replace his court-appointed attorney with one retained by his family. *Id*. at *3-4. In that case, the district court made no effort to ascertain the reasons for Thomas's dissatisfaction with his attorney, nor did it appear to weigh Thomas's right to counsel of his choice against judicial economy. *Id*. at *6-7. We were therefore unable on the record before us to determine whether the district court had abused its discretion and remanded for a hearing on these issues. *Id*. at *7. In this case, Judge Zatkoff decided against further delay after noting that Green had not advanced strong reasons for dismissing Cripps and Kostovski. Thus, we believe that this case is more similar to *Henderson* than to *Thomas*.

## *C.* *Coercion*

On appeal, Green presents the affidavits of his mother, Yvonne Green, and his fiancee, Tracie Scott, as evidence of his claim that Kostovski coerced him into accepting the government's plea offer. In their affidavits, Yvonne Green and Scott alleged that Kostovski stated that the judge "was very prejudice[d] and does not like blacks, and is always harder on them and that if he found [Green] guilty in his court room he would be sentenced to 30 years to life," and that Kostovski asked them to "talk [Green] into taking a 15 year guilty plea to avoid going to [trial] and receiving 30 years to life."

During Green's plea hearing, the judge made a careful and searching inquiry to make sure the plea was entered into voluntarily. Beyond Green's bare allegations and the curiously similar affidavits of Yvonne Green and Scott, there is no evidence that Kostovski attributed racial animus to Judge Zatkoff. Kostovski vigorously disputed this charge. In addition, Green had ample opportunity to file a proper motion to withdraw his plea between the time of his plea hearing, on January 24, 2002, and his sentencing hearing, on April 25, 2002. Further, even if, as Green alleges, Kostovski did tell him that he could receive thirty years to life if convicted, accurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive. Rather, it is exactly the kind of accurate information regarding sentencing exposure which the defendant must have in order to make an informed decision about whether to accept a plea offer. We would also note that Green received the statutory minimum sentence for his offense.

### III.

For these reasons, Green's conviction and sentence is affirmed.