791 F.2d 936
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
TERRY WRIGHT, Defendant-Appellant.
 85-5503
 United States Court of Appeals, Sixth Circuit.
 4/18/86
 
 AFFIRMED
 E.D.Tenn.
 ON APPEAL from the United States District Court for the Eastern District of Tennessee
 Before: ENGEL, KENNEDY, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Terry Wright, appeals from his conviction under 18 U.S.C. Sec. 2113(a), (d) for armed robbery of a federally insured savings and loan association. On November 1, 1983, a black male robbed the Concord Branch of the East Tennessee Savings & Loan Association of approximately $2,000. A federal grand jury indicted defendant for the offense on February 7, 1984. On November 28, 1984, the grand jury returned a superseding indictment charging defendant and Janie Louise Davis with the same offense. The United States District Court for the Eastern District of Tennessee jointly tried the codefendants before a jury. The jury found both defendants guilty. The District Court sentenced defendant to a term of imprisonment of twenty-five years to run consecutively with sentences that the state courts of North Carolina had previously imposed on defendant.
 
 
 2
 On appeal, defendant raises three issues: (1) Whether the record shows that defendant knowingly and intelligently waived his right to assistance of appointed counsel; (2) Whether the United States failed to offer any evidence that the Federal Savings and Loan Insurance Corporation insured the savings and loan association's deposits; and (3) Whether the FBI used unnecessarily suggestive pretrial photographic identification procedures. For the reasons set forth below, we affirm the defendant's conviction.
 
 I.
 
 3
 Initially, defendant argues that the record does not show that his waiver of the assistance of appointed counsel was knowing and intelligent. In Faretta v. California, 422 U.S. 806 (1975), the Supreme Court recognized a defendant's constitutional right to represent himself, without the assistance of counsel, by stating:
 
 
 4
 The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. . . . Although not stated in the Amendment in so many words, the right to self-representation--to make one's own defense personally--is thus necessarily implied by the structure of the Amendment.
 
 
 5
 Id. at 819 (footnote omitted). Later, the Court stated that a defendant has a right to represent himself if the defendant knowingly and intelligently waives the right to counsel. The Court wrote:
 
 
 6
 When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. . . . Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'
 
 
 7
 Id. at 835 (citations omitted). In this case, defendant argues that this Court should order a new trial because the District Court failed to make 'the kind of searching inquiry' necessary to determine whether he 'knowingly and intelligently' decided to represent himself.
 
 
 8
 At defendant's initial appearance before a magistrate on December 19, 1984, the magistrate appointed James Moore as defendant's attorney. Moore continued to represent defendant until after the District Court had denied the codefendants' motions to suppress the eyewitness photographic identifications on the morning of trial. After the District Court had denied the motions, Moore informed the District Court that defendant wanted to dismiss him as counsel. When the District Court asked defendant why he wanted to dismiss Moore, defendant told the District Court that he did not think that Moore was adequately representing him. Defendant mentioned that Moore had been unable to find a fingerprint expert who would testify in court and that the defense had no obtained an alibi witness. After further inquiry, defendant admitted that he had not even told Moore about the potential alibi witness until the day before trial.
 
 
 9
 During the inquiry, the following exchange occurred between the District Court and defendant:
 
 
 10
 Q Do you want to proceed without your lawyer?
 
 
 11
 A Well, I'd like to have another lawyer appointed or given time to consult with my family about bringing one in from North Carolina.
 
 
 12
 Q Well, if your motion to dismiss your lawyer is denied, do you want to go on with your lawyer here or do you just want to represent yourself?
 
 
 13
 A I'll have to represent myself.
 
 
 14
 Q You don't want your lawyer here?
 
 
 15
 A No, sir.
 
 
 16
 Q Why is that you decided today that's what you wanted to do?
 
 
 17
 A Well, I made up my mind about it last night, actually, and today further, you know, considered. There's other things that I feel should be a part of his assistance that, you know, has been failed (phonetic).
 
 
 18
 After the prosecutor had asked defendant several questions, the District Court told defendant:
 
 
 19
 Mr. Wright, you, of course, have the right to represent yourself, if you want to. I am, however, going to ask that your lawyer remain here with you to help you in any way that he can in the trial of the case. He's familiar with it, he's filed numerous motions, he obviously has worked on your case, appears to the court that he's familiar with the issues.
 
 
 20
 After several other exchanges between the District Court and defendant regarding the motion for a continuance, the District Court denied the motion.
 
 
 21
 THE COURT: Well, as I say, I believe your motion for continuance comes too late and is without merit and appears to be made in order to delay, unduly delay, this trial, and I'm going to deny it.
 
 
 22
 You may have a seat there with your counsel. He'll be here to aid you in any way that you wish----
 
 
 23
 MR. WRIGHT: Well, can I have another attorney appointed?
 
 
 24
 THE COURT:--including the putting on of witnesses, cross-examining witnesses for and on your behalf.
 
 
 25
 MR. WRIGHT: Well, can I have another attorney appointed to co-counsel?
 
 
 26
 The District Court asked defendant if defendant had another lawyer he would like to have try the case. Defendant mentioned the name of an attorney in Knoxville, Tennessee that he had heard about. That lawyer, however, previously worked for the United States Attorney's Office and had presented the original indictment that the grand jury returned against defendant. The District Court decided that the lawyer would have a conflict of interest and ruled that the lawyer could not represent defendant.
 
 
 27
 After counsel representing Wright's co-defendant moved for a continuance, which the District Court denied, Moore asked to withdraw as defendant's counsel. The District Court denied that request stating:
 
 
 28
 THE COURT: I can appreciate and understand your feelings about that, counselor, and I'm asking you to stay here as an officer of this court, to be available to this defendant. If he wishes you to participate at any point during the trial, then he may request it.
 
 
 29
 Do you understand that, Mr. Wright? If you want him to participate, he is here; if you don't, he won't. All you have to do is ask him to help you. He's here to do that as an officer of this court. But you don't have to use him.
 
 
 30
 MR. WRIGHT: Well, your honor, I'm a layman at law. I do not know the science of the law.
 
 
 31
 THE COURT: Well, I understand that. I understand that. This is your decision; it's not mine.
 
 
 32
 MR. WRIGHT: Well----
 
 
 33
 THE COURT: You appear to me to be an intelligent individual and you realize now what your limitations are without counsel. I'm saying your lawyer's here, there is a lawyer that will be here that you may utilize at any point during the trial, and get it in.
 
 
 34
 .............................................................
 
 
 35
 ...................
 
 
 36
 * * *
 
 
 37
 MR. WRIGHT: Your Honor, you're putting me at a great disadvantage.
 
 
 38
 THE COURT: You're putting the court at a disadvantage and the system at a disadvantage, unfairly, in my opinion. . . .
 
 
 39
 .............................................................
 
 
 40
 ...................
 
 
 41
 * * *
 
 
 42
 . . . I think your motion, first of all, to dismiss your counsel is made because you want a continuance, you don't want to be tried.
 
 
 43
 In Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (footnotes omitted), the Supreme Court stated:
 
 
 44
 '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right toCounsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.
 
 
 45
 Although the District Court should have taken the precautions suggested in United States v. Welty, 674 F.2d 185 (3d Cir. 1982), to assure, on the record, that defendant knowingly and intelligently waived his right to counsel and to avoid the possibility of this appeal, neither the Supreme Court nor this Circuit has required a particular litany to establish an effective waiver of the right to counsel.
 
 
 46
 Interestingly, we have no statement from defendant that he did not knowingly and intelligently decide to represent himself. (Defendant did not file a motion for a new trial or otherwise raise the issue of the adequacy of the waiver of appointed counsel in the District Court.) Rather, defendant argues that the District Court did not make the required 'searching inquiry.' Viewing the record as a whole, together with the defendant's background, experience, and conduct, we conclude that defendant voluntarily and intelligently waived his right to counsel. In Maynard v. Meachum, 545 F.2d 273, 279 (1st. Cir. 1976), the First Circuit stated that, in addition to a defendant's background, experience, and conduct, a district court may consider 'such factors as [defendant's] involvement in previous criminal trials, his representation by counsel before trial, and the continued presence of advisory counsel at trial in determining whether [defendant] understood what he was getting into.'
 
 
 47
 Initially, defendant's involvement in previous criminal trials indicates that he voluntarily and intelligently waived his right to counsel. Defendant admitted that he had been tried on other charges on four prior occasions. In two of those cases, appointed counsel represented defendant. Retained counsel represented defendant in the other two cases. Second, defendant decided to represent himself after the District Court denied his motion for a continuance. Although his court-appointed lawyer had represented defendant since his arraignment, defendant did not tell his lawyer that he was unhappy with his lawyer's services until the morning of trial. The District Court did not abuse its discretion in denying the motion for a continuance and appropriately gave defendant the choice between proceeding to trial with appointed counsel or representing himself. Consequently, defendant's options were much more limited than in the ordinary waiver case. Since defendant persisted in his desire to represent himself, the District Court permitted defendant to proceed pro se. Third, as a precautionary measure, the District Court directed attorney Moore to remain in the courtroom and assist defendant if defendant needed help. Indeed, Moore did participate in the trial by making, for example, another motion to strike an eyewitness's in-court identification and a motion for judgment of acquittal. Finally, the District Court noted that defendant appeared to be an intelligent individual who realized what his limitations were without counsel. Under these circumstances, we hold that defendant voluntarily and intelligently waived his right to counsel.
 
 II.
 
 48
 Defendant argues that the United States failed to offer in evidence the stipulation that the Federal Savings and Loan Insurance Corporation ('FSLIC') insured the deposits of the savings and loan association at the time of the robbery. At a January 23, 1985 pretrial conference, defendant agreed to stipulate that: 'At all times material to the charge in question, the East Tennessee Savings and Loan Association, Concord Branch, Knox County, Tennessee, had its deposits insured by the Federal Savings & Loan Insurance Corporation.' Although defendant verbally agreed to the stipulation at the pretrial conference, the pretrial order provided that the stipulation 'shall not be effective until this pretrial order is signed by counsel for the Government, counsel for the defendants and the defendants themselves. . . .' Inadvertently, the United States did not have defendant sign the pretrial order prior to trial. The record, however, indicates that defense counsel orally acknowledged at trial that defendant had stipulated that the FSLIC insured the savings and loan association's deposits.[1] The record also indicates that the defense agreed that defendant would sign the pretrial order while the jury was deliberating and that defendant signed the pretrial order before the jury returned the verdicts. Although parties often offer written stipulations as exhibits, we know of no requirement that they introduce stipulations as evidence. A lawyer or the court often merely states stipulations to the jury. Since the District Court instructed the jury that the parties stipulated that the FSLIC insured the savings and loan association's deposits, defendant cannot complain that the government did not prove this element of the crime.
 
 III.
 
 49
 Finally, defendant contends that the pretrial photographic identification procedures were unnecessarily suggestive because only the defendant's photograph included the distinguishing characteristics that every one of the eyewitnesses had previously identified. In Simmons v. United States, 390 U.S. 377, 384 (1968), the Supreme Court held that 'convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' See also United States v. Tyler, 714 F.2d 664, 667-68 (6th Cir. 1983).
 
 
 50
 The District Court ruled that defendant failed to show that the photographic displays were impermissibly suggestive. In United States v. Feldman, 606 F.2d 673, 679 n.11 (6th Cir. 1979), cert. denied, 445 U.S. 961 (1980), this Court noted that: 'It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.' In a pretrial hearing, the District Court allowed defendant's attorney and counsel for the co-defendant to question Pamela Hammond, a savings and loan association employee, and Dr. Jack Bevins, the pharmacist who was working at the pharmacy next to the savings and loan association on the day of the robbery, regarding their pretrial photographic identifications of defendant and co-defendant Davis. Hammond testified that she told FBI agent Ron Johnson that she would not forget the robber's eyes because they were heavy-lidded. After examining, in court, the photos that agent Johnson showed her, Hammond also testified that the individuals in five of the eight pictures in the array had distinctive, heavy-lidded eyes. Dr. Bevins testified that agent Johnson did not show him a male photographic array. Accordingly, we hold that the District Court did not err in concluding that the defendant did not prove that the photographic identification procedures were unnecessarily suggestive.
 
 
 51
 Accordingly, we affirm defendant's conviction.
 
 
 
 [1]
 Defendant does not claim that defense counsel was not acting in his behalf