Lawrence E. WILSON, Petitioner–
Appellant,

v.

Robert L. HURT, Respondent–Appellee.

No. 00–3165.

United States Court of Appeals,
Sixth Circuit.

Feb. 6, 2002.

Before RYAN and BOGGS, Circuit Judges; and WILLIAMS, District Judge.*

PER CURIAM.

Lawrence E. Wilson appeals the judgment of the United States District Court for the Southern District of Ohio, denying his petition for habeas corpus, which sought reversal of his Ohio state convictions for rape and gross sexual imposition. Wilson argues that he proceeded *pro se* for part of his Ohio state trial and did not validly waive his Sixth Amendment right to the assistance of trial counsel before so proceeding. Wilson also argues that the assistance of his appellate counsel was constitutionally ineffective because his counsel failed to raise the validity of his waiver of

* Honorable Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

trial counsel on direct appeal to the Ohio Court of Appeals. For the reasons set forth below, we find each of Wilson's arguments without merit and affirm the district court's denial of his petition for habeas corpus.

I

After a police investigation revealed that Wilson had inappropriately fondled the daughter of his girlfriend, Wilson was indicted for rape and gross sexual imposition under Ohio law. At trial, Wilson was represented by an appointed lawyer, James Armstrong.

After the prosecution had conducted its redirect examination of the victim. Wilson told Armstrong that he wished to ask some questions of the victim on recross examination. As Armstrong advised the court, Wilson asked: "if I take you off the case, can I take over the examination." Wilson complained to the court that Armstrong's cross-examination of the victim had been "inefficient and ineffective." The court then advised Wilson that it had three options:

... let me ask you this, Mr. Wilson. Do you understand that I could do three things here[?] I can dismiss your lawyer, and he can go back to his office and let you fare [sic] for yourself. That's one option. I can refuse to allow him to be dismissed and continue on with him representing you, or the *third option* is that I can *dismiss him as your lawyer*, which would mean that he would not do the examination but that he would stay at counsel table and be a *legal advisor* to you. Do you understand that I have those three options?

(emphasis added).

Wilson initially said that he did not want to dismiss Armstrong, but just to ask some

questions of the victim. Very shortly thereafter, Wilson said "I would just like to right now withdraw the request, and I'll go forward with my attorney as planned, with Mr. Armstrong as my attorney as planned." The court called a recess so that Wilson could discuss with Armstrong any questions that he wanted asked on recross examination.

After the recess, Armstrong informed the court that Wilson had again changed his mind: "with that in mind, he wants to go forward *with option three that you had indicated before,* which is he wants *to take over himself* and examine the witness and have me remain as *legal advisor.*" (emphasis added). Armstrong also told the court that he had advised Wilson of the consequences of "option three:"

> "Just for the record, your Honor, I have informed him that he would conducting the cross-examination of the State's final two witnesses, Sherah [sic] Edwards and Sergeant Wright, and that if he decides that he wants to testify, I have informed him that he has the constitutional right not to, but if he decides to testify, he would do it in narrative form and he would make his closing argument as well, that I would be able to sit here, help him for purposes of objecting to any impropriety in the State's questioning or things of that nature. I believe he understands those things."

The court later clarified the resolution of Wilson's request: "I will then tell the jury merely that the defendant has requested that he be entitled to examine the balance of the witnesses and that Mr. Armstrong will still be *standing by* as his legal advisor. Is that your understanding, Mr. Wilson?" (emphasis added). Wilson responded that the court's statement was his understanding.

Wilson proceeded to conduct the recross-examination of the victim. He chose to testify on his own behalf, and did so in narrative form without questioning from Armstrong. Wilson delivered his own closing argument. The record is silent as to whether Armstrong made any objections during the state's direct examination of its one witness remaining after the victim's testimony or its cross-examination of Wilson, if any, after his narrative testimony. Counsel at oral argument suggested that Armstrong "assisted" in the preparation of answers to questions submitted to the court by the jury during its deliberations. However, there is no mention or description of this activity in either of the parties' briefs or in the record submitted to this court.

The jury found Wilson guilty of rape, but not of gross sexual imposition. He was sentenced to nine to twenty-five years of imprisonment.

Wilson was appointed another attorney for his direct appeal to the Ohio Court of Appeals. On direct appeal, Wilson's appellate counsel raised a variety of issues, including the ineffectiveness of trial counsel, but he did not argue that Wilson had proceeded *pro se* without validly waiving his right to counsel. The Ohio Court of Appeals affirmed Wilson's conviction, and he did not appeal to the Ohio Supreme Court.

Wilson filed a timely Application for Reopening with the Ohio Court of Appeals pursuant to Ohio Rule of Appellate Procedure 26(B). There, Wilson argued that he was denied the effective assistance of appellate counsel on direct appeal because of his failure to raise the invalid waiver of trial counsel argument. The Ohio Court of Appeals held that the performance of Wilson's appellate counsel was effective because the omitted arguments were not meritorious. Specifically, the court held that Wilson had not established the factual predicate of his invalid waiver of counsel

argument. According to the court, Wilson had never proceeded *pro se* because the record showed that he "withdrew his request to proceed without counsel upon inquiry by the court." The court never addressed Wilson's invalid waiver argument outside the context of his ineffective assistance of appellate counsel claim. Wilson appealed the denial of his Application for Reopening to the Ohio Supreme Court, which summarily affirmed the Ohio Court of Appeals.

Having not prevailed on his ineffective assistance of appellate counsel claim in the Ohio courts, Wilson filed a habeas petition in the United States District Court for the Southern District of Ohio. Although the district court suggested that Wilson might actually have proceeded *pro se*, the district court denied Wilson's petition. Wilson now appeals the district court's judgment.

## II

We granted Wilson a certificate of appealability on two issues. First, Wilson argues that he proceeded *pro se* in the middle of the trial and did not validly waive his right to counsel. Thus, he argues that he was denied his Sixth Amendment right to the assistance of trial counsel. Second and closely related, Wilson argues that the assistance of his appellate counsel was ineffective because counsel did not raise his first argument on direct appeal. We address these arguments separately.

Both parties agree that the standard of review is provided by 28 U.S.C. § 2254(d). Thus, Wilson's petition for habeas corpus may be granted only if the decision of the Ohio Court of Appeals "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## A. The Waiver of the Right to Trial Counsel

Wilson argues that when he elected to proceed *pro se* in the middle of his trial, he had not "knowingly and intelligently" waived his right to the assistance of trial counsel. The State of Ohio responds that Wilson's argument skips a crucial step: Wilson never lacked the assistance of counsel because of the continuing, though limited, assistance of attorney Armstrong.

■ The parties argue vigorously over the appropriate characterization of Wilson's defense: whether Wilson proceeded *pro se* for the last part of the trial or received a form of "hybrid representation." While a defendant has a Sixth Amendment right to have counsel conduct his entire defense, *see, e.g., Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), or to proceed *pro se, see Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), he has no constitutional right to demand "hybrid representation," such as conducting his own defense with the occasional assistance of counsel. *United States v. Mosely,* 810 F.2d 93, 97–98 (6th Cir.1987). If Wilson had insisted upon questioning only some of the witnesses on his own, or leaving his attorney to perform some of the "core functions" of counsel, we are certain that the trial court's denial of his request would have raised no constitutional problem. In short, the state is correct to point out that Wilson lacks a constitutional right to hybrid representation.

As it turns out, however, hybrid representation is what Wilson appears to have received. After his request, Wilson examined all of the remaining witnesses, testified in narrative form without the assistance of his counsel, and delivered his own closing argument. His attorney, however, remained at counsel table throughout and

"assisted" in the preparation of answers to questions from the jury to the court during the jury's deliberations. Although there is no indication in the record that Armstrong objected on Wilson's behalf during the state's examination of the two remaining witnesses, it is also not clear that any objections were needed. In any event, it appears that after Wilson asked to question the witnesses, attorney Armstrong at least stayed on in an advisory capacity and at most shared some of the core functions of counsel with Wilson.

Whether Wilson proceeded *pro se* or received "hybrid representation" is a question that we need not resolve. Some federal courts have been clear that a defendant's Sixth Amendment right to counsel is violated, and therefore must be validly waived, whenever the defendant undertakes any of the "core functions of counsel." *See United States v. Davis,* 269 F.3d 514, 519–20 (5th Cir.2001) ("Hybrid or no, the representation sought by [the defendant] entailed a waiver of his Sixth Amendment right to counsel that required the safeguards specified in *Faretta.*"); *United States v. Turnbull,* 888 F.2d 636, 638 (9th Cir.1989) ("If the defendant assumes any of the 'core functions' of the lawyer, however, the hybrid scheme is only acceptable if the defendant has voluntarily waived counsel."); *Locks v. Sumner,* 703 F.2d 403, 407 (9th Cir.1983); *United States v. Kimmel,* 672 F.2d 720, 721 (9th Cir. 1982). *See also* 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.5(g) (1999) ("Of course, since hybrid representation is in part *pro se* representation, allowing it without a proper *Faretta* inquiry can create constitutional difficulties."). Other federal courts, reasoning from the absence of a Sixth Amendment right to hybrid representation, have held that no waiver is required when the court grants a request for some slim forms of hybrid representation. *See United States v. Leggett,* 81 F.3d 220, 223–24 (D.C.Cir.1996) (holding that granting defendant's request to have defense counsel to ask some questions suggested by the defendant, against the advice of counsel, and later personally to ask a few questions of three prosecution witnesses after defense counsel's examination did not require a waiver of his Sixth Amendment right to counsel); *Banks v. Horn,* 271 F.3d 527, 539–40 (3d Cir.2001) (holding that insistence on testifying and having certain exhibits admitted during his testimony, against advice of counsel, at most constituted hybrid representation, and that the failure to obtain a waiver was not contrary to clearly established precedent of the United States Supreme Court, although perhaps was against the Sixth Amendment).

■ We find the former group of decisions well reasoned and the latter logically flawed. Although the defendant has no right to demand hybrid representation, he has a constitutional right against hybrid representation. Put differently, we would certainly hold that the state could not compel the defendant to conduct some important parts of the trial himself. Thus, a trial court must obtain a waiver of the defendant's Sixth Amendment right to have counsel conduct the entire trial before it permits so-called hybrid representation to proceed.

■ The question before this court, therefore, is whether Wilson's waiver of his Sixth Amendment right to counsel was sufficiently robust to permit Wilson to undertake significant "core functions of counsel," such as the questioning of witnesses and the delivering of the closing argument. The Supreme Court has repeatedly held that the waiver of the right to counsel must be "knowing and intelligent" in order to be valid. *See Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d

562 (1975). Although the Supreme Court has never specifically discussed the recommended contents of a court's colloquy with a defendant before undertaking only some parts of his own defense, the Court's recommended discussion for *pro se* representation would certainly suffice. To insure a knowing and voluntary waiver, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Ibid.* (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

Although the Court in *Faretta* was vague on the extent to which a trial court must inform a defendant petitioning to proceed *pro se* about the dangers of self-representation, the circumstances held sufficient for a valid waiver in *Faretta* provide some guidance. In *Faretta,* it was a sufficient waiver for the trial court to explain to the defendant that it "thought it was a mistake not to accept the assistance of counsel" and to inform the defendant that he would be required to follow all the "ground rules" of procedure. *Id.* at 835–36.

■ The trial court did that much and more in this case. The trial court repeatedly attempted to dissuade Wilson from undertaking the questioning of further witnesses himself, calling a recess and urging Wilson to take the time to reconcile his differences with his attorney. Additionally, the trial court informed Wilson that he would be limited by the rules of evidence. The court also insured on the record that Wilson understood the consequences of representing himself. The court asked Wilson whether he understood that, if he represented himself, in addition to conducting the recross examination of the victim, he also would conduct the cross-examination of the prosecution's remaining witnesses, would testify in narrative form, and would deliver his own closing statement.

We cannot find in the record a harsh denunciation of Wilson's decision by the court. But we also cannot find that such a denunciation is required by the "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Even if we were not limited in our review by 28 U.S.C. § 2254(d)(1), we would not hold the defendant's waiver insufficient under the precedents of this court. This court has never required the formality of searching inquiry into the defendant's knowledge of the perils accompanying *pro se* or hybrid litigation for a valid waiver. *See United States v. McDowell,* 814 F.2d 245, 248–49 (6th Cir.1987). The continuing presence of advisory counsel also increases the evidence that a decision to proceed *pro se* was voluntarily made. *See United States v. Wright,* 791 F.2d 936 (table), 1986 WL 16915, *3 (6th Cir.1986); *Maynard v. Meachum,* 545 F.2d 273, 279 (1st Cir.1976). Moreover, much thinner warnings by the trial court, in one case consisting only of a requirement that the defendant consult with his appointed advisory counsel, have been deemed by this court sufficient for a knowing and voluntary waiver. *See McDowell,* 814 F.2d at 247. Here, where the court had advisory counsel discuss with Wilson the implications of undertaking himself the examination of witnesses, required that advisory counsel sit with Wilson for the remainder of the proceedings, advised Wilson on the record of all of his responsibilities if he decided to proceed on his own, and informed Wilson that his questioning would also be bound by the rules of evidence, we hold that the court's development of the record was more than adequate to insure that Wilson's waiver was knowing and voluntary as required by *Faretta.*

## B. Ineffective Assistance of Appellate Counsel

Wilson also argues that the assistance of his appellate counsel was ineffective because he failed to argue that Wilson had not validly waived the assistance of trial counsel.

■■ A defendant has a constitutional right to the effective assistance of counsel on his direct appeal as of right. *See Evitts v. Lucey,* 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."). Whether such representation on direct appeal is effective is governed by the Court's standard in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), covering the effectiveness of trial counsel. *Evitts,* 469 U.S. at 397–99. Under the *Strickland* standard, a defendant's counsel is deemed ineffective if and only if (1) counsel made errors so serious that his performance was outside the "wide range of reasonable professional assistance" that constitutes acting as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's ineffective assistance prejudiced the defendant. *See Strickland,* 466 U.S. at 687, 689, 691. The Court held further that prejudice is established when a defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

■ The only question with regard to the performance of Wilson's appellate counsel before this court is his omission of Wilson's claims regarding the invalid waiver of his right to trial counsel. Assuming, *arguendo,* that the omission was outside the wide range of reasonable professional judgment required for effective counsel

under *Strickland,* we cannot find that Wilson was prejudiced by the omission. Although the *Strickland* prejudice standard does not require that we find that the result "more likely than not" would have been different on appeal, our determination that Wilson's argument regarding the validity of his waiver of trial counsel is without merit is not sufficiently close that we could find a "reasonable probability" that the Ohio Court of Appeals would have decided the question differently and overturned Wilson's conviction.

There is one matter that our holding on the federal constitutional element of Wilson's claim regarding the validity of his waiver of trial counsel does not resolve. Wilson suggests in one sentence that his waiver of counsel was invalid under the decisions of the Ohio courts. If his state claims had sufficient merit such that there is a reasonable probability that, if raised, the result on appeal would have been different, then, as a federal constitutional matter, the assistance of Wilson's appellate counsel could have been ineffective. However, we doubt that his state constitutional claims are sufficiently meritorious. First, these claims were raised before the Ohio Court of Appeals during his ineffective assistance claim. The Ohio Court of Appeals did not find these claims worthy of mention separate from its discussion of the federal issue. Second, as far as we can determine, the decisions of Ohio courts require no more than an inquiry into the defendant's understanding of the "ramifications of proceeding without an attorney." *See State v. Glasure,* 132 Ohio App.3d 227, 724 N.E.2d 1165, 1172 (Ohio Ct.App.1999). Again, we cannot find that the court's discussion with Wilson did not inquire into his understanding of the "ramifications" of personally assuming some of the functions of counsel. We find that Ohio state standards are not relevantly more demanding, so that their inclusion in Wilson's direct appeal would have increased the probabili-

ty of a different result above the consideration of only the federal claim.

### III

Although the district court and the Ohio state courts may have erred by holding that the personal representation in which Wilson did engage did not require a valid waiver of the Sixth Amendment right to counsel, their ultimate rejection of Wilson's claims was certainly appropriate. The trial court's record establishing Wilson's knowledge and the voluntariness of his decision to assume the functions of counsel demonstrates a waiver that satisfies the Sixth Amendment. The failure of Wilson's appellate counsel to raise this issue on direct appeal was not constitutionally ineffective assistance of counsel, given the claim's lack of merit. We therefore AFFIRM the district court's denial of Wilson's petition for habeas corpus.