NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0164n.06

Case Nos. 15-4343/16-3169

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| LANCE EALY, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

**FILED**
Mar 15, 2017
DEBORAH S. HUNT, Clerk

Before: MERRITT, COOK, and McKEAGUE, Circuit Judges.

**MERRITT, Circuit Judge.** This opinion concerns a fraud case that was completed after the defendant Ealy fled the jurisdiction of the court during trial and was finally caught months later. Ealy was then tried for failing to appear at the first trial. Accordingly in these dual appeals by Ealy we have (1) an appeal from a 2014 jury trial in which Ealy was found guilty of multiple counts of fraud (Appeal No. 15-4343), and (2) an appeal from a 2015 bench trial in which Ealy was found guilty of failing to appear for the last three days of the jury trial after he had fled (Appeal No. 16-3169).[1] Ealy was sentenced to 124 months in the 2014 jury trial, and 24 months in the 2015 bench trial to run consecutively, bringing his total sentence to 148 months. In the

_____

[1] Due to the overlapping nature of these appeals and the interests of the court in efficiency and clarity, we have consolidated the cases into a single opinion.

appeal from the 2014 jury trial, Ealy raises multiple issues concerning his various attempts to waive and then unwaive his right to counsel, his attempt to postpone the trial date, the sufficiency of the evidence, and his sentence of 124 months. In the appeal from his 2015 bench trial for failing to appear, Ealy claims that the district court should have dismissed instead of "merging" the counts for failing to appear the last two days of the trial, and that he should have received a sentence under the Guidelines of not more than eight months instead of the 24 month sentence imposed by the court.

All of Ealy's arguments appealing the two district court decisions fail. We therefore affirm both of the judgments. We do not dismiss the appeal or waive Ealy's claims because of his absconding and becoming a fugitive from justice during his trial. *See Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993).

## I. Background

At the end of his November 2014 jury trial, a jury convicted Ealy in abstentia of 46 counts of various forms of fraud, identity theft, and other crimes. Ealy took part in an elaborate tax fraud scheme involving the illegal online trade of personal information, which he used to file fraudulent tax returns. He then hid the proceeds of the fraud in fraudulent bank accounts. After Ealy unknowingly provided identifying information to an undercover agent, investigators obtained a search warrant for an email address to confirm Ealy's identity. In October 2013, Ealy was arrested for violating 18 U.S.C. § 1029(a)(3).[2] In November 2013, he was charged in a single count indictment for committing fraud in connection with an access device. 18 U.S.C. § 1029(a)(3).

---

[2] 18 U.S.C. § 1029(a)(3) prohibits fraud and related activity in connection with access devices: "[w]hoever knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices[.]"

The procedural history of the case is convoluted due to Ealy's interactions with his lawyers. Ealy first retained private counsel Samuel Latham. He then filed multiple *pro se* motions to terminate Latham. Before ruling on the motions, the district judge recused himself. In April 2014, after the case was assigned to a new judge, a grand jury returned a superseding indictment charging Ealy with 42 counts of mail and wire fraud, access device fraud, aggravated identify theft, and filing false tax claims.[3] The indictment alleged that Ealy had planned a tax fraud scheme by filing over 150 fraudulent tax return forms and spreading the proceeds among fraudulent bank accounts.

The new district court judge then considered Ealy's *pro se* motion. The court questioned Ealy about Ealy's concern that Latham was committing malpractice and was intentionally ineffective. After finding that Ealy's waiver of his right to counsel was knowing and voluntary, Ealy was allowed to proceed *pro se*. In May, Ealy changed his mind and moved to have a public defender appointed to the case. The court granted the motion and appointed Thomas Anderson.

In July 2014, Ealy filed a *pro se* motion to terminate Anderson as his counsel. The court entertained the motion and also heard evidence that Ealy had committed crimes while on bond. The court denied the *pro se* motion and revoked Ealy's bond, finding probable cause that he had committed crimes while on bond.

Ealy brought another *pro se* motion to have Anderson terminated and new counsel appointed in August 2014. After a forty-minute hearing, the court declined to appoint new counsel, finding Ealy had not convincingly argued that Anderson had committed malpractice and was unqualified. The court also warned Ealy, and had warned him before, of the risks inherent in *pro se* representation. Still Ealy was allowed to proceed *pro se*, with Anderson appointed as stand-by counsel. Ealy continued to make complaints to the court about Anderson leading up to

---

[3] Eventually, in September 2014, a second superseding indictment was filed that contained 46 counts.

trial, including claims that Anderson would not show him discovery documents. Anderson responded to the court that he had tried to review discovery with Ealy but Ealy refused, and that he had presented a review of the government's case to Ealy.

Before the trial, which was set for October 27, 2014, the court had multiple hearings and status conferences. At hearings on September 25 and October 3, Ealy was specifically asked whether he needed a continuance to properly prepare for trial. Ealy not only stated he did not need a continuance, but also instructed Anderson not to ask for one. Ealy again claimed that Anderson was ineffective stand-by counsel, stating that Anderson had refused to issue subpoenas, work with Ealy's father, and work with a reporter on the case. The district court again rejected Ealy's contentions: "[Anderson] abided completely by the Rules of Professional Conduct . . . as a defense lawyer in this case [and] . . . [has] done his job."

The day before the trial Ealy moved for a continuance, claiming he had been given insufficient time to prepare. The court denied the continuance since Ealy had been offered one on September 25 and again on October 3 and rejected the offers, explicitly informing the court he would be ready. Ealy again claimed that Anderson was ineffective, and asked the district court to appoint new counsel to the case. The district court again rejected the allegations against Anderson as meritless.

At trial, approximately seventy witnesses testified and the government produced evidence that included records of Ealy's email exchanges and bank surveillance footage tying him to the fraudulent tax refunds. But before the end of the trial, Ealy cut off his electronic monitoring device and fled the state. The district court found that Ealy had voluntarily fled and revoked his *pro se* status, requiring Anderson to complete the trial. The trial continued three days in Ealy's absence: November 17, 18, and 19. On November 19, 2014, the jury convicted Ealy of all 46

counts. Six months after fleeing the jury trial, Ealy was captured in Georgia. At sentencing Ealy received 124 months imprisonment.

In October 2015, the Southern District Court of Ohio conducted a bench trial and convicted Ealy of failure to appear. Ealy received an additional 24 months imprisonment to run consecutively for willfully failing to appear at his jury trial, bringing his total sentence to 148 months. These appeals followed.

## II. Analysis

### A. Denial of Motion to Substitute Counsel

Ealy claims the district court erred in denying his repeated requests to replace Thomas Anderson, the appointed public defender, as counsel. We review a district court decision to deny substitution of counsel for abuse of discretion. *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009). "The right to counsel of *choice* . . . is not absolute." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). The defendant must demonstrate good cause to warrant substitution of counsel. *Id.* When analyzing whether the trial court abused its discretion in denying a motion to withdraw or substitute counsel we consider:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

The district court did not abuse its discretion in denying Ealy's motion to substitute counsel. Ealy made multiple timely requests for substitution of his counsel, and the district court allowed Ealy to explain the issues he had with his first attorney, Latham, and his second attorney, Anderson. One of the hearings lasted forty minutes. Despite warnings from the court

about the risks involved, Ealy opted to proceed *pro se*. During that time, the district court continued to entertain Ealy's criticisms of Anderson as stand-by counsel. However, the district court in its discretion did not find Ealy's vague criticisms of his stand-by counsel's "conflict of interest" to be credible, and found Ealy's specific criticisms to be meritless. *See e.g.*, *United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004) (finding that an indigent defendant's mere dissatisfaction with his lawyer's responses does not amount to a lack of communication). This court agrees. The record shows Anderson frequently reached out to Ealy, did his job, and provided an adequate defense. The public's interest in the prompt and efficient administration of justice strongly weighs in favor of the district court's decision.

**B. *Pro se* error**

Ealy also claims the district court erred by conducting a deficient *Faretta* inquiry and "forcing" him to represent himself. A defendant has the right to conduct his own defense before the trial court. *E.g.*, *Faretta v. California*, 422 U.S. 806, 819 (1975). Before the defendant can represent himself, the district court "must ask the defendant a series of questions drawn from, or substantially similar to, the model inquiry set forth in the *Bench Book for United States District Judges*." *United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004) (citing *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987)). Literal adherence to the questions is not required, but the judge must address "the 'relevant considerations' behind the model inquiry, such as 'the defendant's familiarity with the law, . . . the gravity of the charges and the dangers of self-representation,' and whether 'the defendant's decision to waive counsel is voluntary.'" *United States v. Bankston*, 820 F.3d 215, 224 (6th Cir. 2016) (quoting *United States v. Miller*, 910 F.2d 1321, 1324 (6th Cir. 1990)). In the present case, the district court pursued the relevant

inquiry, advised Ealy about the dangers of self-representation, and eventually allowed Ealy to knowingly and voluntarily waive the right to counsel. *See id.* at 227.

The district court did not err in allowing Ealy to proceed *pro se*. The Sixth Amendment prohibits courts from giving defendants a choice between proceeding to trial with unprepared counsel or no counsel at all. *See* U.S. Const. amend. VI. But Ealy was given the choice to proceed with counsel in the form of Anderson, who the record shows was competent. The court may require the defendant to choose between proceeding *pro se* or maintaining current counsel. *See, e.g. United States v. Pittman*, 816 F.3d 419, 425 (6th Cir. 2016). Moreover, persistent and unreasonable demands for dismissal of counsel and appointment of new counsel can waive the right to counsel when the defendant rejects all options except self-representation. *See United States v. Green*, 388 F.3d 918, 921 – 22 (6th Cir. 2004). The district court properly gave Ealy the reasonable option of continuing with Anderson as counsel, and Ealy made the decision within his rights to reject that option. Ealy confuses the right to counsel with a right to be represented by a particular attorney. *See id.* at 921.

In the alternative, Ealy argues that the district court should have re-appointed Anderson as counsel at the beginning of trial, despite Ealy making no motion to do so. Ealy cites no authority that suggests the court should have *sua sponte* re-appointed Anderson as counsel. Again, Ealy made the permissible decision to reject Anderson as counsel and represent himself. *See Pittman*, 816 F.3d at 425. This argument is meritless.

**C. Denial of Motion to Continue Trial**

Ealy argues that the district court erred in denying his motion to continue the trial. This court reviews the denial of motions to continue for abuse of discretion. *United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010). The denial of a motion to continue is an abuse of discretion

when the district court engages in "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Id.* (quoting *Morris v. Slappy*, 461 U.S. 1, 11 – 12 (1983)). To be reversible error, the defendant must show that the district court actually prejudiced him in his defense. *See id.*; *see also United States v. Crossley*, 224 F.3d 847, 855 (6th Cir. 2000).

The district court did not err in denying the motion to continue. The record shows that the district court asked Ealy whether he needed a continuance on both September 25 and October 3. Both times Ealy stated he would be ready for trial on October 27, and he also instructed his stand-by counsel not to ask for a continuance on his behalf. Then, the day before trial, Ealy requested a continuance for improper reasons. In his request, Ealy stated reasons for prejudice that were inconsistent with the record, such as when he received the government's discovery. The record clarifies that Ealy's stand-by counsel and the court sufficiently aided Ealy in his defense and provided sufficient time to review discovery and prepare the case. Any failings in preparation were Ealy's own. *See Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003) (citing *United States v. Burton*, 584 F.2d 485, 490 – 91 (D.C. Cir. 1978) ("[A]mong the factors to be considered by the court in determining whether a continuance was properly denied . . . whether the delay was for legitimate reasons or whether it was 'dilatory, purposeful or contrived;' whether the defendant contributed to the circumstances giving rise to the request . . .")).

**D. Insufficient Evidence**

Ealy claims there was insufficient evidence at trial for the jury to have convicted him. We review de novo a challenge to a criminal jury verdict based on an insufficiency of the evidence claim. *United States v. Cunningham*, 679 F.3d 355, 370 (6th Cir. 2012). We affirm the decision if "after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The defendant bears a heavy burden in making an insufficiency of the evidence argument. *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003).

There is no doubt that the government put forward sufficient evidence for a rational trier of fact to have found the elements necessary for conviction. *See id.* The evidence included: email addresses conclusively tied to Ealy, purchases from those emails for illegally obtained information, strong links to fraudulent bank accounts containing the proceeds of the fraud, ATM surveillance footage showing Ealy personally withdrawing proceeds from the accounts, financial documents tied to the scheme found in Ealy's residence, incriminating searches and emails on Ealy's electronic devices, and dozens of government witnesses. A reasonable trier of fact could certainly weigh the available evidence and convict. *See Cunningham*, 679 F.3d at 370.

### E. Reasonableness of Sentence in Fraud Conviction

Ealy challenges the application of two Guidelines enhancements to his sentence: the Sophisticated Means Enhancement[4], and the Vulnerable Victim Enhancement.[5] We review the procedural reasonableness of sentences under an abuse of discretion standard. *United States v. Taylor*, 800 F.3d 701, 712 (6th Cir. 2015). The district court correctly found that both enhancements apply to Ealy. The government provided evidence at trial that Ealy purchased information from an overseas broker through an "anonymous" electronic "black market financial network" and concealed his actions through complex methods such as VPN software. *See United States v. Erwin*, 426 Fed. Appx 425, 437 (6th Cir. 2011) (finding that "disguis[ing] the

---

[4] U.S.S.G. § 2B1.1(10)(C) states that if "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels."
[5] U.S.S.G. § 3A1.1(b)(1) states, "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels."

origin of funds is sufficient to support an enhancement of sophisticated means"). This is not a simple tax return fraud case. Ealy also clearly targeted vulnerable individuals. The government offered evidence that Ealy intentionally targeted the elderly, the young, nursing home patients, and disabled individuals. Witness testimony supported this evidence. Ealy argues that identity fraud victims must actually suffer "a financial loss" in order to qualify as vulnerable victims. The Sixth Circuit has rejected this contention. *See United States v. Webster*, 615 Fed. Appx. 362, 364–65 (6th Cir. 2015). Accordingly, the district court properly applied U.S.S.G. § 2B1.1(b)(10)(C) and § 3A1.1(b)(1) to Ealy's Guidelines calculation.

## F.  Merger of Failure to Appear Counts

Ealy claims that the district court in his 2015 bench trial erred by disposing of his claim of multiplicity of counts through merger instead of dismissal. "Multiplicity" is charging a single offense in more than one count in an indictment, resulting in a double jeopardy problem. *United States v. Lemons*, 941 F.2d 309, 317 (5th Cir. 1991). Here, it does not appear that the counts were multiplicitous, as each of Ealy's "failure to appear" charges required a "proof of fact" that the others did not.[6] *See United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008). Furthermore, this Court has held that merger is an appropriate remedy when counts are multiplicitous. *See id*. As merger was an appropriate precaution for the district court to take, Ealy's claim fails.

## G.  Reasonableness of Sentence in Failure to Appear Conviction

Finally, Ealy claims that the district court in the 2015 bench trial erred by miscalculating the Guidelines range in sentencing Ealy for his failure to appear conviction. Again, we review

---

[6] Courts use the "*Blockburger* test" to determine if multiplicity exists by requiring a unique proof of fact in each individual charge. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932)*; see also Swafford*, 512 F.3d at 844. Ealy was charged with three counts of failure to appear because he did not appear on three different days of his trial. *See United States v. Dudeck*, 657 F.3d 424, 427 (6th Cir. 2011).

the procedural reasonableness of sentences, including Guidelines calculation, under an abuse of discretion standard. *United States v. Taylor*, 800 F.3d 701, 712 (6th Cir. 2015). Ealy claims that the district court did not properly consider his convictions using the "total punishment" approach in calculating his range. The district court calculated Ealy's range for his Failure to Appear conviction to be 33-41 months. He was sentenced to 24 months.

Ealy's argument is without merit. His real claim is that the court misapplied the U.S.S.G. § 3C1.3 "Committing Offenses While on Bond" enhancement to his 2014 jury trial convictions when calculating his "hypothetical Guidelines range," to see what his range would have been if both trials had occurred together.[7] However, this argument just attempts to distract from the fact that Ealy's *actual* advisory range in *this* case was 33-41 months, and the court sentenced him to 24 months–below the range.

### III. Conclusion

All of Ealy's arguments in both cases fail. As Ealy's fraud case is not remanded, it is unnecessary to consider Ealy's argument that the case should be assigned to a different judge on remand.

We **AFFIRM** the judgment of the district court in the 2014 jury trial. We **AFFIRM** the judgment in the 2015 bench trial.

---

[7] That hypothetical advisory range was calculated by the district court to be 121-151 months. The court found this calculation "instructive" in sentencing, not conclusive.